1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DUANE BEECHAM, KIMBERLY
     BEECHAM, and S.Y.B., a minor by and        Case No. 2:15-CV-01022-KJM-EFB
12   through her co-guardians ad litem DUANE
     BEECHAM and KIMBERLY BEECHAM;
13   OLIVER VERGARA, JENNIFER                    ORDER
     VERGARA, and E.V., a minor by and
14   through her co-guardians ad litem OLIVER
     VERGARA and JENNIFER VERGARA;
15   and M.B., a minor by and through his
     guardian ad litem MANOJ
16   THOTTASSERI,

17                    Plaintiffs,

18        v.

19   ROSEVILLE CITY SCHOOL DISTRICT,
     THERESA VANWAGNER, GEORGE
20   ROOKS, JERROLD JORGENSEN, and
     DOES 1-30,
21
                      Defendants.
22

23

24             Plaintiffs claim a public school teacher slapped, pinched, pushed and kicked three

25   racially diverse children with autism.  The three children and their parents sue the teacher, the

26   school district, the principal and the superintendent for civil rights violations.  Two defense

27   summary judgment motions are now before the court, ECF Nos. 143, 144, both of which

28   ////

                                                1

plaintiffs oppose, ECF Nos. 153, 154. The court held a hearing on October 20, 2017. As explained below, the court GRANTS in part and DENIES in part defendants' motions.

I.      FACTUAL BACKGROUND

The parties have filed multiple statements of undisputed facts. *See* ECF Nos. 143-1, 147, 153-2, 154-2. The court derives the undisputed facts here primarily from the statement attached to the District's motion and from plaintiffs' statement of facts in opposition to that same motion. District Facts ("DF"), ECF No. 147; Pls.' Facts ("PF"), ECF No. 154-2. These facts are undisputed unless otherwise stated. Although parties may object to evidence cited to establish undisputed facts, *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010), the evidentiary admission standard at this stage is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be overcome at trial, *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). Admissibility at trial depends not on the evidence's form, but on its content. *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The court addresses objections, if relevant, as they arise.

A.      The Parties

Plaintiffs S.Y.B., M.B. and E.V. (collectively, "Minors") were preschoolers assigned to Ms. Van Wagner's special education class, which began in August or September of 2013. PF 2. The Minors share four relevant traits. First, at all times relevant to this motion, the Minors were aged three to four years old. PF 1. Second, they all have autism and display behavioral problems and speech delays common to their disability. PF 31, 33, 35. Third, they are racial minorities: E.V. is Filipino, M.B. is Indian and S.Y.B. is biracial. PF 38, 119. Fourth, they bore the brunt of Ms. Van Wagner's corporal punishment. PF 29, 37.

Each Minor is represented in this action by guardians ad litem, and the remaining plaintiffs are S.Y.B's parents, Mr. and Mrs. Beecham, and E.V.'s parents, Mr. and Mrs. Vergara (collectively, "Parents"). First Am. Compl. ("FAC"), ECF No. 30, ¶¶ 3-4, 6-7. The defendants are Ms. Theresa Van Wagner, Principal George Rooks, Superintendent Jerrold Jorgensen and the Roseville City School District ("District"). *Id.* ¶¶ 12-15.

### B.     Ms. Van Wagner's Physicality

The first time Principal Rooks heard Ms. Van Wagner had disciplined the Minors physically was on October 1, 2013.  DF 2.  A classroom coordinator, Ms. Mercer, relayed to Rooks that a substitute classroom aide had seen Ms. Van Wagner hit plaintiff M.B.  DF 2-4.  Rooks confronted Ms. Van Wagner the next day and Ms. Van Wagner explained she had merely signed the word "stop," which, from behind, must have looked like a slap.  DF 5.  Rooks did not investigate further.  DF 5.

The next month, two more things happened.  In the beginning of November, Rooks heard Ms. Van Wagner yelling at students generally in her classroom and he immediately chastised her for it.  DF 6, 9.  Then on November 14, 2013, the school's speech therapist reported Ms. Van Wagner had pinched S.Y.B. on the arm.  DF 7.  Within two days, Rooks confronted Ms. Van Wagner about it, and she explained she was not pinching S.Y.B. but rather was holding S.Y.B.'s arm to prevent her running away.  DF 8.  Dissatisfied with this response, Rooks gave Ms. Van Wagner a letter of reprimand on November 18, 2013, and met with S.Y.B.'s father to discuss the pinching incident.  DF 10.  Rooks also told his supervisor and Superintendent Jorgensen about both the yelling he had overheard and the pinching incident.  DF 9.

On November 22, 2013, the Friday before Thanksgiving, misconduct reports against Ms. Van Wagner proliferated.  Several classroom aides simultaneously reported to Rooks that Ms. Van Wagner was verbally and physically abusing the Minors.  PF 16-17, 40-41.  They relayed incidents of yelling, whacking, slapping, pushing, kicking, pinching, hair pulling and racial disparagement.  PF 5-7, 12, 18.  Examples included Ms. Van Wagner's hitting S.Y.B. in the head with a box, saying "[t]hat's what happens when you don't get out of the way"; hitting M.B. with a shoe as he yelled "no, no, no"; trapping E.V. against a table as he sobbed; and slapping E.V. in the mouth for spitting out food.  PF 9, 19-24, 28, 136.  Two classroom aides also reported that Ms. Van Wagner used racially charged language when describing the Minors, saying M.B. looked like a refugee or someone from a third-world country; E.V.'s parents dressed him in fancy clothes to make him look smarter; and S.Y.B. was very "street smart" and she "knows who she can play."  PF 39, 114-16.

C.    Responses to Van Wagner's Actions

In response to these November 22, 2013 reports, Rooks immediately called his supervisor and the police. DF 16. The police advised Rooks to call back after Thanksgiving with a detailed report. DF 16. That same day, the school dismissed Ms. Van Wagner from her teaching position. DF 16. On December 2, 2013, immediately after the Thanksgiving break, Rooks filed a detailed police report. DF 16. Rooks and his supervisor devised a plan regarding what information to share with the parents. DF 17.

On December 2 and 3, 2013, Rooks met with one parent of each Minor and relayed that he had received complaints about Ms. Van Wagner's mistreatment of the Minors and that he had immediately filed a police report against her. DF 18-19. He also explained Ms. Van Wagner would no longer teach the Minors, and he described generally the nature of the abuse as including pinching, slapping and hair pulling. DF 18. Although Rooks advised the parents he could not tell them details based on legal personnel protections, he explained the school was investigating Ms. Van Wagner and cooperating with the police. DF 17-19; *see also* Rooks Dep. (Ex. A, Fralick Decl., ECF 145-1) at 132-35.

As a result of Van Wagner's conduct described above, and the failure of Rooks, Jorgensen and the District to prevent that conduct or inform the Parents about it, plaintiffs allege they have suffered considerable harm. The Minors cite damage to their behavioral and social capabilities as well as their relationships with their families; the Parents cite anxiety, depression and sleeplessness caused by being under-informed about the abuse their children endured and by seeing their children suffer. PF 66-75, 141-49.

D.    Procedural History

Plaintiffs sued Ms. Van Wagner, Principal Rooks, Superintendent Jorgenson and the District in May 2015. ECF No. 1. The operative, amended complaint makes the following eleven claims: 42 U.S.C. §1983 Excessive Force, Equal Protection, and Substantive Due Process claims against Ms. Van Wagner, Rooks and Jorgensen (Claim 1); California Civil Code § 52.1 ("Bane Act") claims against all defendants (Claim 2); Americans with Disabilities Act ("ADA") discrimination claim against the District (Claim 3); Rehabilitation Act Section 504 disability

discrimination claim against the District (Claim 4); Battery claim against Ms. Van Wagner (Claim 5); Intentional infliction of emotional distress ("IIED") claim against all defendants (Claim 6); Negligence claim against all defendants (Claim 7); Negligent supervision claim against the District, Rooks and Jorgensen (Claim 8); Violation of mandatory duties claim against the District, Rooks and Jorgensen (Claim 9)[1]; Unruh Act claim against all defendants (Claim 10);

Education Code section 220 claim against the District (Claim 11); and a Title VI Civil Rights Act claim against the District (Claim 12).[2] *See generally* FAC.

Ms. Van Wagner moves for summary judgment on Claims 1, 2, 6, 7 and 10. Van Wagner Mot., ECF No. 143. The District, Rooks and Jorgensen jointly move for summary judgment on Claims 1, 3, 4, 6, 7, 8 and 9. District Mot., ECF No. 144. Plaintiffs oppose both motions. Pls.' Van Wagner Opp'n, ECF No. 153; Pls.' District Opp'n, ECF No. 154.

II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more

---

[1] E.V. and S.Y.B. stipulated to dismiss the mandatory duty claim as pled against Ms. Van Wagner.

[2] At hearing, plaintiffs' counsel conceded plaintiffs are not pursuing this twelfth claim.

than simply show that there is some metaphysical doubt as to the material facts"). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant], there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial," *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)), "even in the absence of a factual dispute[,]" *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572).

The court addresses plaintiffs' federal claims below, and then turns to the state statutory and common law claims.

III.    SECTION 1983 CLAIM (CLAIM 1)

Section 1983[3] provides a cause of action for people who believe their federal rights have been violated by someone acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Here, the individual defendants acted under color of state law: They committed the allegedly unlawful actions as a teacher, principal or superintendent of a public elementary school. Plaintiffs contend Ms. Van Wagner used constitutionally excessive force against the Minors, and

---

[3] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

deprived the Parents of their relationship with their children; plaintiffs further argue Principal

Rooks and Superintendent Jorgenson were deliberately indifferent to this abuse and so are

vicariously liable. They also say Ms. Van Wagner denied them equal protection based on their

race. *See* FAC ¶¶ 70-75.

A.    Excessive Force

The Minors contend Ms. Van Wagner used excessive force against them in

violation of the Fourth Amendment and that Rooks and Jorgensen were deliberately indifferent to

this abuse. Pls.' Van Wagner Opp'n at 11; Pls.' District Opp'n at 13. Defendants argue this

claim is more appropriately analyzed under the Fourteenth Amendment's excessive force

prohibitions, and that the claim necessarily fails under that stringent standard. District Mot. at 19;

Van Wagner Mot. at 9-10.

As early as 1977, the Supreme Court determined that public school students have a

constitutional due process right "to be free from, and to obtain judicial relief for, unjustified

intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). Relying on

*Ingraham*, the Ninth Circuit initially held that excessive and unreasonable corporal punishment of

public school students violates their substantive due process rights. *See, e.g.*, *P.B. v. Koch*, 96

F.3d 1298, 1301-04 (9th Cir. 1996). Following *Ingraham*, the Supreme Court found in the

prisoner context that Section 1983 excessive force allegations generally should be analyzed under

a specific constitutional provision, not generalized, substantive due process notions. *Graham v.

Connor*, 490 U.S. 386, 393-94 (1989). In response, the Ninth Circuit has recognized, within the

school context, "the movement away from substantive due process and toward the Fourth

Amendment[,]" *Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908 (9th Cir. 2003) (citation

omitted), but has simultaneously noted it is "'possible for a school official to use excessive force

against a student without seizing or searching the student, and that the Fourth Amendment would

not apply to such conduct.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1181

n.5 (9th Cir. 2007) (quoting *Doe*, 334 F.3d at 909).

Fourth Amendment excessive force claims outside the school context generally

have triggered the Fourth Amendment only if the alleged abuse sufficiently stifles one's ability to

move. *See Doe*, 334 F.3d at 909 (explaining a seizure "in the constitutional sense . . . occurs when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave."); *cf. Hurtado v. Cty. of Sacramento*, No. 2:14-CV-00323-KJM-KJN, 2016 WL 1450573, at *5 (E.D. Cal. Apr. 13, 2016) (explaining in non-school context that officer pushing someone to ground does not trigger Fourth Amendment because it does not sufficiently stifle that person's movement). But in the teacher-student excessive force context, Ninth Circuit precedent has not drawn a bright line separating corporal punishment that constitutes a traditional "seizure," meaning punishment that restricts the student's ability to move, from corporal punishment that does not. *Compare Doe*, 334 F.3d at 909 (analyzing abuse under Fourth Amendment where student was "held to a tree with tape for five minutes") *with Preschooler II*, 479 F.3d at 1178-80 (also analyzing abuse under Fourth Amendment where student was "grabbed" by the hands and "slapped [] repeatedly" and "hit" on the "head and face" and "maliciously body slammed [] into a chair" and "forced . . . to 'walk without shoes across the asphalt'").

Most district courts throughout the Ninth Circuit, but not all, evaluate teacher-student excessive force claims by applying Fourth Amendment standards even when the alleged abuse does not fully restrict the student's movement. *See, e.g.*, *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 978 (N.D. Cal. 2016) (finding Fourth Amendment applied to excessive force claims based on allegations that teacher slapped, kicked, pushed, grabbed developmentally disabled students; noting "it is abundantly clear that K.T.'s excessive force claim should be analyzed under the Fourth Amendment"); *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1053 (D. Nev. 2007) (same; analyzing excessive force claim under Fourth Amendment where alleged abuse involved being "rough, and screaming and posturing," "roughly grabb[ing] students by the arm" and "force-fe[eding a] Preschooler . . . by prying his mouth open with her fingers, making him cry and throw up."); *see also Young v. Mariscal*, No. 3:16-CV-00678-VPC, 2017 WL 2540575, at *1 (D. Nev. June 12, 2017) (same; using Fourth Amendment to analyze excessive force claim where the teacher "grabbed [student's] right wrist forcefully," pulled him, spun him around, and struck him, causing him to hit the wall); *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *2 (N.D. Cal. Nov. 4, 2013) (same; noting "use

of force" allegations against students "must be analyzed under the Fourth Amendment"); *Doe v. Nevada*, No. 02:03-CV-01500-LRH-RJJ, 2008 WL 1924039, at *3 (D. Nev. Apr. 30, 2008) (same; Fourth Amendment applies where teacher "grabbed preschooler under armpit and flung him two to three feet onto a mat" and made preschooler "forcefully hit himself in the head approximately ten times" and "placed preschooler in a chair with force.").

A few district courts have maintained a requirement that the alleged force must restrain the student's movement to trigger the Fourth Amendment. *See, e.g.*, *S.V. by & through Valencia v. Delano Union Elementary Sch. Dist.*, No. 1:17-CV-00780 LJO JLT, 2018 WL 400321, at *2 (E.D. Cal. Jan. 12, 2018) (explaining excessive force claims in school context "should ordinarily be brought under the Fourth Amendment" but such claims require a "*seizure*"; "where there are no allegations of a . . . seizure, the claim should be brought as a substantive due process claim") (citations omitted; original emphasis); *Pearson v. Cent. Curry Sch. Dist. No. 1*, No. 6:15-CV-1353-AA, 2015 WL 5665457, at *2 (D. Or. Sept. 22, 2015) (same; dismissing Fourth Amendment excessive force claim where complaint included no allegations that the restraint rose to the level of a seizure); *Garedakis v. Brentwood Union Sch. Dist.*, No. C 14-4799 PJH, 2015 WL 2453295, at *4-6 (N.D. Cal. May 22, 2015) (dismissing Fourth Amendment excessive force claim because the complaint did not adequately show any seizure; noting facts did not show teacher's actions limited the minors' freedom of movement beyond what is inherent in a school setting).

On balance, there appears to be a trend toward analyzing all teacher-student excessive force claims under the Fourth Amendment, even where the alleged abuse does not restrict the student's movement. *See Hugunin v. Rocklin Unified Sch. Dist.*, No. 2:15-CV-00939-MCE-DB, 2017 WL 202536, at *4 (E.D. Cal. Jan. 17, 2017) (surveying Ninth Circuit precedent and explaining why Fourth Amendment should apply to teacher-student excessive force claims generally, especially to "particularly egregious" claims, even where student is never seized). After careful consideration, and recognizing an unresolved district court split, this court elects to apply the Fourth Amendment to the excessive force claims in this case. This approach makes sense given that whether there is a Fourth Amendment seizure depends on whether a reasonable

person would feel free to leave. *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001). In a school setting, there are inherent limits on students' ability to leave. *See Pearson*, 2015 WL 5665457, at *2 (acknowledging seizure test may apply differently in school setting because "children sent to public school are lawfully confined to the classroom," while nonetheless requiring allegations that a teacher's restraint rose to the level of a "seizure.") (citations and quotation marks omitted); *cf. J.C.R. v. City & Cty. of San Francisco*, No. 14-CV-03918 NC, 2015 WL 5316249, at *1 (N.D. Cal. Sept. 11, 2015) (explaining in summer camp context, Fourth Amendment applies to excessive force claims regardless of type of force used "because [the student] was not free to leave the camp premises and was therefore seized."). The more-expansive view on restraint is particularly applicable where as here the abused students are three and four-year old preschoolers with autism and speech delays. A juror could reasonably find that the Minors here did not feel free to escape any abuse their teacher subjected them to. The Minors' excessive force claim is properly analyzed under the Fourth Amendment.

### 1. Ms. Van Wagner

The Minors have raised a triable issue as to their Fourth Amendment excessive force claim against Ms. Van Wagner.

To assess whether Ms. Van Wagner used excessive force, the court asks whether her actions were "'objectively reasonable' in light of the facts and circumstances confronting [her]" and balances "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Stated differently, courts "balance the amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (citation omitted). This test is not "mechanical"; courts usually leave this fact-intensive reasonableness test to the jury to "carefully consider[] the objective facts and circumstances[.]" *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citation omitted). A district court's "decision to take the excessive force question away from the jury [can] conflict[] with circuit law." *Id.* at 1441.

Here, construing the facts in plaintiffs' favor, a reasonable juror could find that striking, pushing, slapping and kicking three and four-year-old special needs students on campus constitutes excessive force in violation of the Fourth Amendment. The required inquiry is particularly fact-intensive, as it involves balancing the Minors' age, emotional states and communication challenges, each of which contributes to their vulnerability, against Ms. Van Wagner's purported reasons for using the physical punishments she did. *See id* at 1441-42.; *see also Preschooler II*, 479 F.3d at 1180 (noting the teacher's "slapping . . . beating and slamming were unreasonable in light of the child's age and disability" and noting "at such a young age and suffering from significant and serious disabilities . . . Preschooler II was even more vulnerable than the average pre-school child.").

Triable issues remain as to the Minors' excessive force claim against Ms. Van Wagner. Accordingly, the court DENIES summary judgment for Ms. Van Wagner on this claim.

### 2. Principal Rooks and Superintendent Jorgensen

The Minors also bring a supervisory liability claim under Section 1983 against Rooks and Jorgensen for inadequately reporting or remediating the alleged abuse once they became aware of it, which, plaintiffs argue, shows "deliberate indifference" to the Minors' constitutional rights.

Vicarious liability is inapplicable to Section 1983 claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a section 1983 suit . . . –where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer."). Supervisory officials can, however, be liable under Section 1983 if they directly participate in constitutional violations or if their inaction in the face of a subordinate's wrongdoing is sufficiently culpable. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). For inaction to be unconstitutional, the supervisor must have failed to prevent known violations, acquiesced to reported constitutional deprivations, or displayed "a reckless or callous indifference to the rights of others." *Preschooler II*, 479 F.3d at 1183 (citation and quotation marks omitted). Equally important, the culpable act or omission must have caused the constitutional harm. *Id.* "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or

reasonably should know would cause others to inflict' constitutional harms." *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

Here, there is insufficient evidence for any reasonable juror to conclude Rooks or Jorgensen supported, acquiesced to or acted in a manner that was callously indifferent to the Minors' constitutional rights. The first time Rooks heard about any action of Ms. Van Wagner's that might qualify as abuse was on October 1, 2013. DF 2. He was told a classroom aide saw Ms. Van Wagner hitting a student, but the aide expressly stated the incident neither constituted child abuse nor was worthy of reporting to the police. DF 3-4. Rooks nevertheless promptly confronted Ms. Van Wagner and only then satisfied himself the incident required no further investigation. DF 5. The next month, two more things happened and Rooks responded immediately: Rooks heard Ms. Van Wagner yelling at her class from his office and he immediately chastised her for it; then a speech therapist reported Ms. Van Wagner had pinched S.Y.B.'s arm, and Rooks again immediately confronted her, reprimanded her, reported her misdeeds to his supervisor and to Superintendent Jorgensen, and met with S.Y.B's father about it. DF 6, 8-9.

It was not until November 22, 2013 that Rooks discovered the extent of Ms. Van Wagner's misconduct. DF 11-13. The same day he received a number of different reports, he notified his supervisors as well as the police, and the District then released Ms. Van Wagner from her position. DF 16. Rooks filed a detailed police report a week later, as instructed by the police. DF 16. Then Rooks made sure to meet with at least one parent of each Minor and relayed as much information as his supervisors permitted while the investigation against Ms. Van Wagner was still ongoing. DF 17-19. Rooks told the parents about the November 22, 2013 reports concerning Ms. Van Wagner's physical actions towards the Minors; and he told the parents he had reported Ms. Van Wagner's misconduct to the police and removed her from her teaching position; but he omitted further detail about what Ms. Van Wagner allegedly did. DF 17-19; Rooks Dep. at 132-35.

As to Jorgensen, his only alleged wrongdoing is that he was twice notified about Ms. Van Wagner's abuse and insufficiently responded to it. Rooks told Jorgensen, soon after November 18, 2013, about the early incidents of alleged physical discipline Ms. Van Wagner carried out. DF 9. In response, Jorgensen took no action, as Rooks explained he had handled the incident with a letter of reprimand and that Rooks was satisfied as to Ms. Van Wagner's explanation. DF 9. Jorgensen was again notified about Ms. Van Wagner's more serious conduct on November 22, 2013, after which he immediately called Rooks to discuss reporting the conduct to the police and removing Ms. Van Wagner from her position, both of which the two did that very day. DF 15-16.

Based on this record, no reasonable juror could find either Rooks or Jorgensen failed to prevent known violations, acquiesced to constitutional violations, or displayed callous indifference to Ms. Van Wagner's treatment of the Minors. Rooks and Jorgensen immediately investigated the reported abuse and released Ms. Van Wagner from her position. That they could have responded more aggressively, more swiftly or differently does not create a triable issue; the court assesses only whether "'the need for more or different action is so obvious . . . so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)); *see also Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1989 (9th Cir. 2006) (explaining court's role is not to second-guess a reasonable supervisory approach, it is to "decide whether a reasonable fact-finder could conclude that the College's response was clearly unreasonable in light of the known circumstances . . . we must decide whether, on this record, one could find that the College made an official decision . . . not to remedy the violation.") (citations and quotation marks omitted); *cf. Estate of Massey v. City of Phila.*, 118 F. Supp. 3d 679, 695-96 (E.D. Pa. 2015) (finding at pleading stage, supervisory liability plausible where school principal, knowing a student with asthma was having difficulty breathing, and knowing asthma attacks could cause death, prevented a student from getting medical attention, which then contributed to her death).

The court GRANTS summary judgment for Rooks and Jorgensen on the Minors'
Section 1983 excessive force claim.

   B.   Substantive Due Process: Deprivation of Familial Relationship

Plaintiffs contend Ms. Van Wagner's abuse and the school officials' neglecting to
inform the Parents earlier about the abuse interfered with the Parents' rights to nurture, support
and comfort their children and the children's rights to receive their support. FAC ¶ 74.

To the extent the Minors bring this due process claim based on the loss of their
parents' comfort, plaintiffs' counsel at hearing conceded the claim cannot survive. *See Graham*,
490 U.S. at 395 (where excessive force victims have a Fourth Amendment claim, they may not
also bring substantive due process claims based on same conduct).

The parties dispute whether the Parents' inability to provide loss of comfort and
support can ground this due process claim, as the Ninth Circuit recognizes only limited instances
in which such claims can survive. *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.
1985) ("a parent has a constitutionally protected liberty interest in the companionship and society
of his or her child," and "[t]he state's interference with that liberty interest without due process of
law is remediable under section 1983."). Specifically, the Ninth Circuit has recognized such
claims when a child dies, or when the parents either lose custody or lose total contact with a child,
as a result of the defendant's use of unconstitutional force. *See*, *e.g.*, *id.* (death); *Ram v. Rubin*,
118 F.3d 1306, 1310 (9th Cir. 1997) (loss of custody); *Morrison v. Jones*, 607 F.2d 1269 (9th Cir.
1979) (loss of all contact). Defendants ask the court to limit this right to similarly permanent and
total deprivations, although they offer no authority or reasoning for doing so. District Mot. at 4-5;
Van Wagner Mot. at 19-20.

District courts have come down on both sides of this question. Some have rejected
the argument that a due process claim asserting loss of companionship based on child abuse is
"limited to instances in which a parents' rights are permanently impaired," finding instead that the
injury's severity is assessed more appropriately in a damages award, rather than the foreclosure of
a liability claim. *See Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1014 (D. Ariz. 2009); *Ovando v.
City of Los Angeles*, 92 F. Supp. 2d 1011, 1019 (C.D. Cal. 2000) ("Nowhere [does the Ninth

Circuit] indicate that a deprivation of a duration shorter than the entirety of the child's life was not a 'deprivation'" . . . this Court can find no principled basis for drawing such a distinction."). One court denied a motion to dismiss a mother's due process claim that "[d]efendants interfered with [the mother's] right to familial association with her daughter by deliberately failing to notify her of the sexual assault, depriving her of the opportunity to provide solace and comfort." *Schroeder ex rel. Schroeder v. San Diego Unified Sch. Dist.*, No. 07cv1266-IEG(RBB), 2007 WL 4225449, at *4-5 (S.D. Cal. Nov. 26, 2007). Yet other courts have taken a more narrow stance, finding such a claim can proceed only if the "'termination of the parent-child relationship or [interference with it is] so intrusive as to be the equivalent of termination.'" *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *2 (N.D. Cal. Nov. 4, 2013) (quoting *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1066-69 (D. Mont. 2005)).

The court need not resolve the question here, however, because a substantive due process claim also requires conduct that shocks the conscience, and that requirement is not met on the facts of this case. *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008). The "shock-the-conscience" standard sets an extremely high bar, reserved for "only the most egregious official conduct." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (holding conduct shocks the conscience when it is so "brutal" and "offensive" as to not "comport with traditional ideas of fair play and decency"). Examples of qualifying conduct include defendants' shooting a man in the head and killing him, *see Porter*, 546 F.3d at 1135, defendants' shooting a man in the head and chest such that they permanently impaired his mental faculties, *see Ovando*, 92 F. Supp. 2d at 1015, or defendants' allowing a child to be sexually molested, *see Doe*, 615 F. Supp. 2d at 1013. In other words, substantive due process is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 (1976).

Though the Minors' mistreatment here gives the court pause, without more, the nature of the grabbing, slapping and kicking of young children with special needs is not so depraved as to be among the "most egregious" of official conduct under the law. *K.T.*, 219 F. Supp. 3d at 979-80 (similar facts; same conclusion). By extension, failing to fully inform

parents sooner about this conduct likewise does not meet this high threshold. The court is thus compelled to conclude, based on this record, no reasonable juror could find this mistreatment meets the high standard of egregiousness required to support a due process claim. The court GRANTS summary judgment for all defendants on this claim.

C. Equal Protection – Race Discrimination

The Minors contend Ms. Van Wagner violated their Fourteenth Amendment equal protection rights by treating them differently based on their race.

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). When a state actor denies someone equal protection of the law, the denial is actionable under Section 1983. To succeed on a Section 1983 equal protection claim, a plaintiff must show the defendant "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (defendant must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.").

This claim survives summary judgment. A reasonable juror could find based on the following evidence that Ms. Van Wagner intentionally treated the Minors differently to similarly situated Caucasian students. First, S.Y.B., E.V. and M.B. are racial minorities, and all but one of the remaining students in the class are white. PF 38, 119. Second, several classroom aides declare the Minors received the worst of Ms. Van Wagner's abuse. PF 29, 37. Third, as discussed below, Ms. Van Wagner made racially charged comments about each of the Minors.

Construing the facts in plaintiffs' favor, Ms. Van Wagner made the following comments: She said M.B., who is Mexican, looks like a refugee and like someone from a third-world country; she said E.V., who is Filipino, dresses in fancy clothes to make himself look smarter; and she said S.Y.B., who is half black, is "a very street smart kid" and she "knows who she can play." PF 39, 114-16. Finally, though not directed at a specific Minor, Ms. Van Wagner

16

made a particularly disparaging remark about Mexicans generally, telling her classroom aide "everybody should own a Mexican" and then asking, "do you know where I can find a housekeeper?" PF 116. Although "'stray' remarks are insufficient to establish discrimination" by themselves, *Merrick v. Farmers Ins. Gr.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (gathering cases), when paired with the classroom aides' testimony that the Minors received the brunt of Ms. Van Wagner's abuse, her racially charged comments could lead a reasonable juror to conclude that the abuse was motivated, at least partially, by the Minors' race.

Ms. Van Wagner's arguments to the contrary are unavailing. First, she argues her comments were not racial at all. *See, e.g.*, Van Wagner Mot. at 18 ("Refugees do not belong to any particular race, nor are refugees considered to be members of any protected class."). To support this position, she cites a single witness's opinion that her comments were not racially motivated. *See* Van Wagner Mot. at 9 (citing classroom aide Ms. Garibaldo's testimony). Even if Ms. Van Wagner's comments are ambiguous, at summary judgment a court must construe reasonable ambiguities in the non-movant's favor. *Anderson*, 477 U.S. at 255. One witness's opinion to the contrary does not eliminate a genuine dispute of material fact.

Second, Ms. Van Wagner contends she never made racist comments towards other non-white students in her class, which shows her comments against the Minors were race neutral. Van Wagner Mot. at 18. Favorable treatment of other racial minorities does not bar a race discrimination claim, especially not at summary judgment "for such evidence creates at most a genuine dispute[.]" *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1561 (9th Cir. 1994) (Asian woman sued university for sex and race discrimination; favorable treatment of other Asian women did not entitle defendant to summary judgment); *see also Peoples v. Cty. of Contra Costa*, No. C 07-00051 MHP, 2008 WL 2225671, at *8 (N.D. Cal. May 28, 2008) (citing *Lam* to find evidence that another African American received promotion did not entitle defendant to summary judgment on plaintiff's race discrimination claims). The court DENIES summary judgment on the Minors' equal protection claim.

D.     Section 1983 Conclusion

No Section 1983 claims survive against Rooks and Jorgensen.  As to Ms. Van Wagner, the Minors' excessive force and equal protection claims will proceed to trial.

IV.     DISABIILITY DISCRIMINATION (CLAIMS 3 AND 4)

The Minors assert disability discrimination claims against the District under the ADA and the Rehabilitation Act.  ADA Title II[4] and Rehabilitation Act Section 504[5] prohibit public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services and programs.  42 U.S.C. § 12132; 29 U.S.C. § 794.  The elements for both claims are nearly identical.  Under the ADA, the Minors must prove they are "qualified individual[s] with a disability" and that the District denied them benefits or services "by reason of" their disability.  *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation omitted); 42 U.S.C. § 12132.  Under the Rehabilitation Act, plaintiffs must prove the same, except the denial must have been "solely by reason of" their disability.  *Duvall*, 260 F.3d at 1135; 29 U.S.C. § 794.  To obtain money damages under either statute, as the Minors here seek, they must prove "intentional discrimination."  *Duvall*, 260 F.3d at 1138 (citation omitted).  In the Ninth Circuit, deliberate indifference meets this intent requirement; the standard is satisfied if the District knew harm to plaintiffs' federally protected rights was "substantially likely" yet failed to act in the face of that knowledge.  *Id.* (citations omitted)

Here, the Minors claims against the District cannot withstand summary judgment.  The District does not dispute that the Minors are "qualified individual[s] with a disability" under both statutes.  The claims fail, however, on the deliberate indifference requirement.  The Minors' claims derive from Ms. Van Wagner's classroom conduct, which they allege amounts to

---

[4] "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

[5] "[N]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.

discrimination based on their disabilities. Although there are factual issues as to whether Ms. Van Wagner's abuse reflects discriminatory animus, discussed below, the Minors have not identified factual disputes as to the District's "deliberate indifference" to the potentially discriminatory conduct. To proceed on deliberate indifference, the Minors must raise triable issues regarding the District's failure to act even though it knew Ms. Van Wagner was abusing the Minors. *See Duvall*, 260 F.3d at 1138. No evidence here could lead a reasonable juror to that conclusion. The first time the District knew about the misconduct giving rise to this lawsuit was on November 22, 2013, the date the classroom aides first reported the core misconduct to Rooks, who then reported it to Superintendent Jorgensen. DF 12-13. That very day, the District swiftly and strongly reacted by dismissing Ms. Van Wagner and telling Rooks to report her to the police. DF 15-16. The incidents occurring before November 22, even though less severe, were likewise dealt with swiftly. DF 2 (Rooks confronting Ms. Van Wagner immediately after hearing she slapped M.B.; accepting her explanation that it did not happen); DF 7 (confronting, reprimanding, and reporting Ms. Van Wagner within days of her pinching S.Y.B.). No reasonable juror could find based on this record that the District, in the face of known disability discrimination, acted with deliberate indifference.

The Minors also attempt to bring a "hostile education environment" claim, yet cite only persuasive district court cases as support. *See* Pls.' District Opp'n at 24-26 (citing New York and Massachusetts district court cases). No court within the Ninth Circuit has recognized such a claim under Title II or the Rehabilitation Act. *See Garedakis*, 183 F. Supp. 3d at 1046 (recognizing same void and declining to recognize such a claim). Even if this court were to recognize such a claim here, an award of monetary damages under the ADA still requires that the District acted with deliberate indifference in the face of such hostility. As shown above, no reasonable juror could find such indifference based on this record. Accordingly, assuming without deciding that a hostile education claim can be made, the court finds such a claim would not survive summary judgment.

In sum, there is no triable issue as to the District's liability under the ADA or the Rehabilitation Act. The court GRANTS summary judgment for the District on these claims.

1    V.     STATE LAW CLAIMS

2              Two of the Minors, S.Y.B. and E.V., and the Parents also have raised tort,

3    common law and state civil rights claims against defendants.  Defendants move for summary

4    judgment on several of these claims, which the court grants in part as explained below.

5         A.     Bane Act Claim (Claim 2)

6              S.Y.B., E.V. and the Parents contend each defendant used excessive force against

7    the Minors in violation of California Civil Code section 52.1, known as the Bane Act.  FAC ¶¶

8    76-78.  The Bane Act prohibits intentionally interfering with a person's state civil rights by way

9    of threats, intimidation, or coercion.  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998).  The

10   elements of a Bane Act excessive force claim are essentially identical to those of a Section 1983

11   excessive force claim, provided the two claims are premised, as they are here, on the same alleged

12   conduct.  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (citations

13   omitted); *Stevenson v. Holland*, No. 1:16-CV-01831-AWI-SKO, 2018 WL 1109707, at *13 (E.D.

14   Cal. Mar. 1, 2018) (explaining courts "have consistently found that the elements of a § 1983

15   excessive force claim and a Bane Act claim premised upon the use of excessive force are

16   identical."); *Malott v. Placer Cty.*, No. 2:14-CV-1040 KJM EFB, 2014 WL 6469125, at *5 (E.D.

17   Cal. Nov. 17, 2014) (citing *Knapps* and holding the same); *Bordegary v. Cty. of Santa Barbara*,

18   2016 WL 7223254, *14 (C.D. Dec. 12, 2016) (collecting cases).

19             Ms. Van Wagner argues the Bane Act claim must fail against her because "there is

20   no evidence [she] acted at any time in an effort to interfere with the exercise of anyone's

21   constitutional rights," and "there is no evidence that she threatened any of the plaintiffs herein,

22   nor committed acts which could reasonably be construed as violence . . . ."  Van Wagner Mot. at

23   22.

24             The court disagrees.  Because there are triable issues as to the Minors' Section

25   1983 excessive force claim against Ms. Van Wagner, the same holds true as to S.Y.B. and E.V.'s

26   state excessive force claim.  *See*, *e.g.*, *Jones v. Cty. of Contra Costa*, Case No. 13-cv-0552-TEH,

27   2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016) (finding plaintiff "need not allege a showing

28   of threats, intimidation or coercion independent from the coercion inherent in the use of force"

because the plaintiff alleged intentional conduct by the defendants in the form of excessive force) (citation omitted); *Stubblefield v. City of Novato*, Case No. 15-cv-03372-JCS, 2016 WL 192539, at *11 (N.D. Cal. Jan. 15, 2016) (holding plaintiff's allegation of excessive force by the defendant officers sufficient to state a Bane Act claim).

Conversely, no force or intimidation-related claims remain against the District, Rooks or Jorgensen and so, without more, the Bane Act claim against these three defendants necessarily fails. Likewise, the Parents have raised no triable Bane Act claims on their own behalf, as no evidence shows any force was directed at them.

The court DENIES summary judgment to Ms. Van Wagner on S.Y.B.'s and E.V.'s Bane Act claim, but GRANTS summary judgment for all remaining defendants.

B.    Unruh Act Claim (Claim 10)

Minors S.Y.B. and E.V. bring an Unruh Act civil rights claim against all defendants based on alleged race and disability discrimination. The Unruh Act provides,

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). When an Unruh Act claim does not derive from ADA violations, the claim succeeds only if it involves "intentional" discrimination. *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991) ("[W]e hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination . . . A disparate impact analysis or test does not apply to Unruh Act claims."), *superseded in part as recognized in Munson v. Del Taco, Inc*., 46 Cal. 4th 661, 664-65 (2009) (noting the now-codified exception where "[a] plaintiff who establishes a violation of the ADA . . . need not prove intentional discrimination in order to obtain damages under section 52.1."). To prevail here, S.Y.B. and E.V. must therefore raise a triable issue as to each defendant's intentional discrimination.

1.    The District, Principal Rooks and Superintendent Jorgensen

S.Y.B. and E.V.'s Unruh Act claim against the District, Rooks and Jorgensen cannot survive. The court above has found no triable issue as to Rooks's or Jorgensen's intent or

deliberate indifference as to plaintiffs' federal, disability and race-based discrimination claims. The same core undisputed facts drove both conclusions: The first time any supervisory school official discovered the facts pertaining to either race or disability discrimination was on November 22, 2013, and in response they promptly removed Ms. Van Wagner from the classroom and filed a police report. DF 15-16. That plaintiffs may disagree with the speed or manner of the school officials' response to Ms. Van Wagner's misdeeds is not enough; there is insufficient evidence in the record for a reasonable juror to find Rooks, Jorgensen or the District intentionally discriminated against them or acted with deliberate indifference in the face of known discrimination. Accordingly, the court GRANTS summary judgment for the District, Rooks and Jorgensen on the Unruh Act claim brought by S.Y.B. and E.V.

2.     Ms. Van Wagner

The Unruh Act claim survives as to Ms. Van Wagner, both as to disability and race discrimination. As explained above, a reasonable juror could find Ms. Van Wagner's actions were racially motivated.

A reasonable juror could also find the Minors' disabilities drove Ms. Van Wagner's abuse. Ms. Van Wagner's argument that the Minors' misbehavior, not their disabilities, drove her actions is unavailing on summary judgment, although she may of course make the argument to the jury. The Minors' behavioral challenges are common to children with autism. PF 30, 83, 85. Separating the Minors' misbehavior from their disabilities, and gauging which characteristic drove Ms. Van Wagner's actions, requires a fact-intensive credibility determination, the job of a jury. Accepting Ms. Van Wagner's unsupported explanation that her harsh enforcement tactics were attributable only to the Minors' difficult behavior, especially when that behavior is linked to a disability, is an invitation to slide down a slippery slope at the bottom of which all discrimination claims would be dashed, valid or not. *Cf. E.H. v. Brentwood Union Sch. Dist.*, No. C-13-3243-TEH, 2013 WL 5978008, at *5 (N.D. Cal. Nov. 4, 2013) (finding plausible disability discrimination where school officials grabbed and dragged plaintiff in "direct response to manifestations of his disability[.]"); *but see Vieira v. Honeoye Cent. Sch. Dist.*, No. 9-CV-6163-CJS-JWF, 2013 WL 1915770, at *8 (W.D.N.Y. May 8, 2013) (finding

allegations insufficiently tied to disability to support discrimination claim where teacher's frustration towards blind student was aimed at student's performance).

The court DENIES summary judgment for Ms. Van Wagner on this claim, both as to disability and race discrimination.

C.     IIED, Negligence and Negligent Supervision Claims (Claims 6, 7 and 8)

S.Y.B., E.V. and the Parents assert IIED claims and negligence claims against all defendants, and a negligent supervision claim against only the District, Rooks and Jorgensen.[6] FAC ¶¶ 95-107.  Defendants move for summary judgment on each claim.  District Mot. at 30.

1.     Parents: Special Relationship

The Parents tacitly concede their negligence and IIED claims depend on the finding of a "special relationship" between themselves and the named defendant, a relationship that gives rise to a specific duty to prevent harm to a third party.  *See* Pls.' Van Wagner Opp'n at 24; *see also Phyllis v. Superior Court*, 183 Cal. App. 3d 1193, 1196 (1986) (recognizing mother's claim based on child's rape plausibly pled when based on special relationship with school). Without this special duty, plaintiffs' claims, which derive from emotional distress based on harm to a third party, cannot survive unless the Parents directly witnessed the abuse, which the Parents here did not.  *See Thing v. La Chusa*, 48 Cal.3d 644, 661, 669 (1989) (circumscribing third party tort claims; denying parent's damages claim based on emotional distress caused by child's car crash injury where parent did not witness the crash and learned of the injury only afterwards).

Each case the Parents cite references a special relationship between school entities, supervisory school officials, or school-based camps or associations; not one case extends this special relationship to a teacher.  *See Doe v. U.S. Youth Soccer Ass'n, Inc.*, 8 Cal. App. 5th 1118, 1130 (2017) (soccer association has special relationship with parents; noting "parents entrusted their children to [association] with the expectation that they would be kept physically safe and protected from sexual predators while they participated in soccer activities."); *Doe v. Superior*

---

[6] The FAC also lists Ms. Van Wagner as a defendant on plaintiffs' tort claims, but plaintiffs have since agreed not to pursue tort claims against her.  Pls.' Van Wagner Opp'n at 26.

*Court*, 237 Cal. App. 4th 239, 246 (2015) (summer camp provider has special relationship to parents and thus has duty to exercise reasonable care to prevent harm); *Phyllis*, 183 Cal. App. 3d at 1196 (school has special relationship with parents and thus has duty to report to mother abuse her daughter suffered at school); *Dailey v. L.A. Unified Sch. Dist.*, 2 Cal. 3d 741, 747 (1970) (school districts and supervisory school officials have special duty to parents and thus owe a duty to "'supervise at all times the conduct of the children on school grounds and to enforce those rules and regulations necessary to their protection.'") (quoting *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 600 (1941)).

The court finds the requisite special relationship can extend only to the District, Rooks and Jorgensen, not to Ms. Van Wagner. Accordingly, and as discussed below, claims six and seven against Ms. Van Wagner cannot survive.

## 2. Discretionary Immunity

Even with the requisite special relationship, Government Code section 820.2 shields Rooks and Jorgensen from liability for high-level discretionary decisions regarding how to discipline Ms. Van Wagner and what information to disclose to the parents. *See* Cal. Gov't Code § 820.2 ("Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."). Though broad, this discretionary immunity is not limitless; it applies only to "basic policy decisions" or "quasi-legislative policy making [decisions]," not to "lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (citation and internal quotation marks omitted); *see also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998). For immunity to be triggered, Rooks and Jorgensen must have actually "render[ed] a considered decision," and must show that "the employee, in deciding to perform (or not perform) the act which led to plaintiff's injury, *consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (original emphasis); *cf. Walsh v. Tehachapi*

*Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (denying immunity where record showed no such deliberation).

Here, the decision of Rooks and Jorgensen regarding how to investigate Ms. Van Wagner, when to dismiss her, and how much information to divulge to the Parents while the police investigation was pending, were all considered decisions in which Rooks and Jorgensen exercised the type of discretion that entitles them to immunity. At every juncture, the undisputed record shows Rooks carefully considered his enforcement options and responded with increasingly severe disciplinary action. DF 3-5, 7-8, 16. In response to the first report of Ms. Van Wagner's slapping M.B., Rooks immediately confronted Van Wagner and then determined not to investigate further based on Ms. Van Wagner's explanation. DF 3-5. In response to the second report of Ms. Van Wagner's pinching S.Y.B., Rooks reprimanded her and involved both his superiors and S.Y.B.'s father. DF 7-8. In response to the third, more serious reports of abuse, Rooks involved the police and his superiors, which then led to Ms. Van Wagner's being released from her position. DF 16. Afterwards, with input and specific instructions from his superiors, Rooks measured how much he could tell the Parents about Ms. Van Wagner's alleged abuse while the investigation against her was pending. DF 17-18.

These decisions involve precisely the kind of discretion section 820.2's protection contemplates. *Kemmerer v. Cty. of Fresno*, 200 Cal. App. 3d 1426, 1438 (1988) ("The decision whether or not to initiate discipline proceedings and what discipline to impose is placed initially on the department head and the decision is entirely within his discretion. The decision involves the exercise of analysis and judgment as to what is just and proper under the circumstances and is not purely a ministerial act."); *Walsh*, 827 F. Supp. 2d at 1122 ("Decisions by a school's supervisory personnel regarding disciplinary matters are generally considered 'discretionary' and within the scope of section 820.2.") (citation omitted); *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997) ("decisions by a school principal or superintendent to impose discipline . . . and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather

than ministerial, acts."); *but see Corales v. Bennett*, 488 F. Supp. 2d 975, 990 (C.D. Cal. 2007) (denying section 820.2 immunity for a principal's decision to discipline student).

In sum, the actions and decisions giving rise to plaintiffs' negligence claims against Rooks and Jorgensen were the product of deliberate, policy-conscious decision-making. Both defendants are therefore immune from liability to the extent these decisions are the basis for plaintiffs' negligence claims against them. The District likewise cannot be held liable for negligence based on these discretionary acts. Cal. Gov't Code § 815(a).

### 3. IIED (Claim 6)

All defendants move for summary judgment on the Parents' IIED claim. An IIED claim requires proof of (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard as to the probability of causing, emotional distress; (2) plaintiff's severe or extreme emotional distress; and (3) causation. *Christenson v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (citation omitted).

The Parents' IIED claim cannot succeed for several reasons, the clearest being the absence of any disputed fact to support defendants' "extreme and outrageous conduct." In assessing this IIED claim, the court considers not what conduct was directed at the Minors, but rather only the conduct directed to the Parents. *Id.* ("It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."). The only actions arguably "directed" at the Parents here were Ms. Van Wagner's concealing her own abusive behavior and the school officials' failure to tell the Parents details of the abuse beyond vague examples, while an investigation was ongoing.

No reasonable juror could find the failure to inform the Parents here amounted to "extreme and outrageous conduct." The court has identified only three analogous "failure-to-inform" IIED claims in the school context, and both are easily distinguishable. In *Phyllis*, a mother brought an IIED claim against school employees based on the sexual assault and rape of her daughter by a fellow student. *See Phyllis*, 183 Cal. App. 3d at 1194-95. The child's teacher, school psychologist and principal all knew of several prior sexual assaults the daughter had

endured from the same student, but instead of notifying the mother, "they took it upon themselves to withhold that information," they "engaged in a 'cover-up' which they should have foreseen would cause petitioner more emotional distress than merely informing her of the incidents in the first place[,]" and then "dealt with the perpetrator . . . with what amounted to a slap on the wrist." *Id.* at 1196-97. The state court of appeals reinstated the mother's IIED claim, explaining the trial court had erroneously dismissed it. *Id.* at 1193.

More recently, and relying on *Phyllis*, two courts in the northern district declined to dismiss an IIED claim against school officials where those officials knew a student was being abused but failed to inform the parents. In *Smith v. Tobin world*, school officials knew a special needs student was "repeatedly and unjustifiably [] being restrained and physically mistreated by school personnel" over the course of an entire school year and despite promising to keep his mother "clued in to any problems or issues," the school "concealed [the] abuse from law enforcement and others" and "failed to inform her about the abuse." No. 16-CV-01676-RS, 2016 WL 3519244, at *7-8 (N.D. Cal. June 28, 2016). Then in *Zuccaro v. Martinez Unified Sch. Dist.*, a four-year old special needs student had allegedly been physically and verbally abused throughout the school year by a teacher and two aides, yet the school despite knowing about the ongoing abuse failed to ever tell the mother. Instead the mother found out from another concerned parent who had witnessed the abuse. No. 16-CV-02709-EDL, 2016 WL 10807692, at *1-2, 9 (N.D. Cal. Sept. 27, 2016).

Here, unlike in *Phyllis*, *Smith* and *Zuccaro*, the Parents' IIED claim cannot survive. Not only is the procedural posture different here from that of *Phyllis*, *Smith* and *Zuccaro*, but the facts also are far less egregious. The slapping and pinching, which lasted less than two months here, while not insignificant, is not nearly as severe as the re-occurring sexual assaults and eventual rape in *Phyllis*, or the year-long abuse in *Smith* and *Zuccaro*. Unlike the cover-ups in *Phyllis*, *Smith* and *Zuccaro*, the Parents here were promptly told that their children were abused, the general nature of that abuse and that Ms. Van Wagner would no longer teach their children. DF 17-19 (Rooks informed one parent per student within a day of filing police report). Rooks also informed S.Y.B.'s father on November 18, 2013, about an alleged pinching

incident, which Rooks had only just discovered a day or two earlier. DF 10. The reason the Parents were not informed earlier about additional abuse is because the core allegations did not come to light until November 22, 2013, after which Ms. Van Wagner was immediately removed from the classroom and reported to the police. DF 16-17. The Parents were informed a week later, on December 1 and 2, within a day of Rooks' filing the police report. DF 17-19. In those meetings, Rooks described to the Parents the general nature of abuse and explained why he could not divulge more details while a law enforcement investigation was pending. Rooks Dep. at 132-35. No evidence permits a reasonable fact finder to conclude the defendants' conduct meets the "extreme and outrageous" threshold.

The court GRANTS summary judgment for all defendants on the Parents' IIED claim.

### 4. Negligence and Negligent Supervision (Claims 7 and 8)

These claims cannot survive against any defendant. The negligence claims against Ms. Van Wagner cannot survive because Ms. Van Wagner does not have the requisite "special relationship" to the Parents, as explained above. The negligence claims against the District, Rooks and Jorgenson cannot survive because they derive from decisions that fall within section 820.2's discretionary immunity provisions, discussed above. *See* FAC ¶¶ 101-07. The court therefore GRANTS summary judgment for all defendants on the Parents' negligence and negligent supervision claims.

## VI. TORT CLAIMS ACT FILING DEADLINE (CLAIMS 6, 7, 8 AND 9)

The District, Rooks and Jorgensen argue the Parents' Claims 6, 7, 8 and 9 are all barred for failure to comply with California's Tort Claims Act. District Mot. at 31-36. The court disagrees.

Under the Tort Claims Act, an individual plaintiff is barred from suing a government entity for money damages unless that plaintiff first files a timely claim for damages with that entity public entity, which that entity then rejects. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1237 (2004) (citing Cal. Gov't. Code § 945.4). The applicable claim-filing period for damages claims based on negligence and intentional torts is six months. *McMahon v.*

*Valenzuela,* No. 2:14-CV-02085 CAS(AGRx), 2015 WL 5680305, at *10 (C.D. Cal. Sept. 24, 2015).

Here, the District, Rooks and Jorgensen contend the Parents' tort claim, which was filed in February 2015, is untimely because the Parents discovered the relevant abuse more than a year earlier, in December 2013. *See* District Mot. at 33; DF 105 (February 2015 claim rejected as untimely). Considering the District, Rooks and Jorgensen admittedly declined to inform the Parents of the details of the abuse inflicted upon their three and four-year-old, non-verbal preschoolers with autism, the court rejects this untimeliness argument. Under the delayed discovery doctrine, a cause of action accrues only when the elements of the cause of action were reasonably discoverable. *S.M. v. L.A. Unified Sch. Dist.*, 184 Cal. App. 4th 712, 717 (2010) (citation omitted). So the Parents' claims here did not accrue until they learned what abuse their children faced. *Cf. Jefferson v. Cty. of Kern*, 98 Cal. App. 4th 606, 610 (2002) ("When the person who is injured is a minor, as here, the parents' knowledge or lack of knowledge is controlling.") (citation and quotations marks omitted).

On this record, it is unclear when the Parents acquired the requisite knowledge. The parties dispute what information law enforcement and the school divulged to the Parents and when. *Compare* District Mot. at 31-35, *with* Pls.' District Opp'n at 33-35. Determining what the parents knew and when and how they discovered that information, especially when it involves credibility assessments, is a factual question for the jury. *Id.* at 611 ("Many cases have acknowledged, if they have not directly held, that the date of accrual of a cause of action is subject to jury determination when the issue is raised in connection with a tort claim."); *accord Wozniak v. Peninsula Hosp.*, 1 Cal. App. 3d 716, 725 (1969). A jury here could reasonably conclude the Parents' claim was timely filed within six months of discovering the severity of abuse their children endured. Accordingly, and noting the Tort Claims Act should not be used to "snare the unwary," *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446, (2004) (citation and quotation marks omitted), the court DENIES this basis for summary judgment.

VII. REMAINING CLAIMS

The Minors also raise claims independently from their parents, on which the briefing either is silent or contains only fleeting discussion. These claims include a battery claim against Ms. Van Wagner; an IIED claim against all defendants; a negligence and negligent supervision claim against all defendants; a mandatory duty to report claim against Rooks, Jorgensen and the District; an Education Code section 220 discrimination claim against the District. *See generally* FAC. This order does not impact those claims.

VIII. CONCLUSION

The court adjudicates defendants' summary judgment motion as follows:

- Claim 1: DENIED on excessive force and equal protection claims against Ms. Van Wagner, GRANTED as to all remaining claims and defendants.
- Claim 2: DENIED as to Ms. Van Wagner, GRANTED as to all remaining claims and defendants.
- Claims 3 and 4: GRANTED in full.
- Claim 6: GRANTED as asserted against the Parents only.
- Claims 7 and 8: GRANTED as asserted against the Parents only.
- Claim 9: GRANTED by stipulation as to Ms. Van Wagner, DENIED as to remaining defendants.
- Claim 10: DENIED as to Ms. Van Wagner, GRANTED as to remaining claims.
- Claim 12: GRANTED by stipulation as noted at hearing.

As a result, the following claims will proceed to trial:

1. Claim 1: Section 1983 excessive force and equal protection (All Minors v. Ms. Van Wagner);
2. Claim 2: Bane Act (S.Y.B. and E.V. v. Ms. Van Wagner);
3. Claim 5: Battery (S.Y.B. and E.V. v. Ms. Van Wagner);
4. Claim 6: IIED (S.Y.B. and E.V. v. all defendants);
5. Claim 7: Negligence (S.Y.B. and E.V. v. all defendants);
6. Claim 8: Negligent supervision (S.Y.B. and E.V. v. Rooks, Jorgensen, District);

7.   Claim 9: Violation of mandatory duty (S.Y.B. and E.V. v. Rooks, Jorgensen, District);

8.   Claim 10: Unruh Act (S.Y.B. and E.V. v. Ms. Van Wagner);

9.   Claim 11: Education Code section 220 (S.Y.B. and E.V. v. District)

IT IS SO ORDERED.

This resolves ECF Nos. 143, 144.  A Final Pretrial Conference on these remaining claims is set for **June 1, 2018**, at **10:00 AM**, with a joint pretrial statement due three weeks prior.

DATED:  April 25, 2018.

_____
UNITED STATES DISTRICT JUDGE