UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE BEECHAM, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>ROSEVILLE CITY SCHOOL DISTRICT, et al.,<br><br>            Defendants. | No. 2:15-cv-01022-KJM-EFB<br><br><br>ORDER |

Students within the Roseville City School District ("RCSD") allege they were physically, verbally and emotionally abused by their teacher, Theresa Van Wagner. The students are S.Y.B., through parents and guardians ad litem Duane and Kimberly Beecham; E.V., through parents and guardians ad litem Oliver and Jennifer Vergara; and M.B, through guardian ad litem Manoj Thottasseri. They brought this action against RCSD; Van Wagner; George Rooks, the Preschool Program Coordinator; and Jerrold Jorgensen, the District Superintendent for Personnel, for various federal and state law violations. After multiple attempts, the parties agreed to settle their respective claims. The minor plaintiffs now move for court approval of the agreements. ECF Nos. 231, 232, 234. The motions are unopposed. After hearing the motions, reviewing the supplemental accounting filed following hearing, and for the reasons set forth below, the court GRANTS the motions.

I. BACKGROUND

S.Y.B., E.V. and M.B. (collectively "minor plaintiffs"), each diagnosed with autism and possessing limited communication abilities, were students in a special needs class taught by Van Wagner at Kaseberg Elementary School beginning September 1, 2013. First Am. Compl. ("FAC"), ECF No. 30, ¶¶ 16, 18. The complaint alleges that under Van Wagner's care, the children were subject to severe physical, verbal and emotional abuse. *Id.* ¶ 19. The abuse came in the form of hitting, slapping, pinching, pushing, yelling and pulling by the hair or ears. *Id.* The minor plaintiffs were "specifically targeted" by Van Wagner and received the brunt of her discipline. *Id.* ¶ 21.

The complaint asserts the abuse and humiliation were motivated by racial animus, as Van Wagner was frequently overheard using derogatory remarks such as "refugee" and "cholo," and claiming one student "looks like he is from a third world country," the parents of another student dress him in "fancy clothes to try to make him look smarter," and "[e]verybody should own a Mexican." *Id.* ¶¶ 24, 25. This behavior prompted Rooks to file a report with the Roseville Police Department ("RPD") on November 22, 2013, and on December 2, 2013 the RPD began a formal investigation against Van Wagner. *Id.* ¶¶ 31, 32. As a result, she was charged with three counts of violation of California Penal Code § 273, and ultimately pled no contest to lesser charges. ECF Nos. 231 ¶ 14, 232 ¶ 14, 234 ¶ 15. Parents of the minor plaintiffs were unaware of the abuse and the charges against Van Wagner until receiving a protective order on September 4, 2014. FAC ¶ 36. Although initially unaware of the abuse, the parents observed behavioral and emotional changes in their children during their time as Van Wagner's students. *See, e.g., id.* ¶ 41 ("S.Y.B.'s parents began to sense something was wrong."), ¶ 52 ("E.V. began displaying unusually difficult behavior."), ¶ 62 ("M.B.'s behavior underwent significant adverse changes.").

Plaintiffs initiated this action on May 12, 2015. ECF No. 1. On April 25, 2018, the court granted in part and denied in part defendants' summary judgment motions, narrowing the claims proceeding to trial. ECF No. 161. Claims based on 42 U.S.C. § 1983, for violation of their Fourth Amendment rights, survived as to all minor plaintiffs. *Id.* at 30. And the state law

claims for battery, intentional infliction of emotional distress, negligence, and violations of the Unruh Civil Rights Act, § 220 of the Education Code and Civil Code § 52.1 survived as to S.Y.B. and E.V. *Id.* at 30–31. The parties settled their respective claims on October 23, 2018, and ask the court to approve the agreements here. ECF Nos. 231, 232, 234.

## II. LEGAL STANDARD

District courts have a duty to protect the interests of minor or incompetent litigants. *See* Fed. R. Civ. P. 17(c)(2) (requiring a district to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). This special duty requires a district court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* E.D. Cal. L. R. 202(b) ("No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise.").

The Ninth Circuit instructs district courts to "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. This requires the court to "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182.

## III. DISCUSSION

### A. Fair and Reasonable

At the December 7, 2018 motion hearing, the court raised several questions regarding discrepancies in the settlement calculations and asked plaintiffs' counsel to file a supplemental accounting to ensure accuracy of the net settlement amount calculations. Counsel has filed that accounting. ECF No. 241. Upon review, the court is satisfied with the accuracy of the calculations provided, and, to the extent there are discrepancies between the accounting and the parties' original motion papers, the court relies on counsel's accounting here. The parties

agree to settle the claims of S.Y.B. and her parents for a total of $1,000,000. ECF No. 231 ¶ 36. Ten percent of the settlement proceeds are to be divided evenly between the parents, 5 percent to each, with S.Y.B. to receive the remaining $900,000 in gross proceeds. *Id.* Thus, S.Y.B.'s share of the gross proceeds is 90 percent. *Id.* S.Y.B.'s proportional share of the litigation costs is $75,509.23. *Id.* ¶ 38. Under the family's retainer agreement, counsel, the Law Offices of Peter Alfert, PC and the Law Offices of Todd Boley, are to receive 25 percent of the gross settlement recovered before trial, which amounts to $250,000, with S.Y.B. to bear $225,000 of the cost according to her 90 percent share. *Id.* ¶ 39. After fees and costs are reduced, S.Y.B.'s net recovery will be $599,490.77.

Likewise, E.V. and his parents agree to settle on similar terms. Of the $1,000,000 gross settlement between them, E.V. will receive a 90 percent share, or $900,000. ECF No. 232 ¶¶ 36–37. Attorney fees are charged at the rate of 25 percent against the family's gross settlement proceeds, and E.V.'s specific litigation expenses total $76,486.16. *Id.* ¶¶ 38–39. After reduction of costs and fees, E.V.'s net recovery will total $598,510.84.

M.B.'s recovery is significantly less, reflecting M.B.'s proceeding on federal claims only. The parties agree to settle M.B.'s claims for a gross total of $500,000. ECF No. 234 ¶ 29. Litigation costs attributable to M.B. are $83,910.24, and attorney fees account for 25percent of the gross recovery. *Id.* ¶¶ 30–31. Thus, after fees and costs, M.B.'s net recovery will be $251,089.76.

The court determines that the proposed settlement is fair and reasonable to all minor plaintiffs. This litigation has been long and arduous, and significant mental, emotional and financial resources have been expended. The minor plaintiffs' injuries are primarily mental and emotional in nature. ECF Nos. 231 ¶ 59, 232 ¶ 59, 234 ¶ 48. Plaintiffs' counsel retained a child psychologist who diagnosed each minor as suffering from Post-Traumatic Stress Disorder, and recommends long term therapy, ongoing testing and retention of advocates to assist with special education needs. *Id.* Plaintiffs' counsel believe the settlement terms are fair and that sufficient evidence has been produced to establish each minor suffered direct physical abuse by Van Wagner. ECF Nos. 231 ¶ 60, 232 ¶ 60, 234 ¶ 49. Defendants, however, contend that Van

Wagner's behavior was beyond the scope of her employment, and the extent of each minor's injuries could be challenged by expert testimony at trial. *Id.* Therefore, if this matter were to proceed to trial, the minor plaintiffs would face two primary challenges: (1) proving RCSD's responsibility for Van Wagner's actions, and (2) recovering from Van Wagner as she has discharged her personal liability through bankruptcy. *Id.* In light of these obstacles, this settlement presents a fair and reasonable compromise.

Although M.B.'s recovery is substantially less than S.Y.B. and E.V., it is nonetheless a fair and reasonable settlement of his claims. As noted, only federal claims remain as to M.B., as he did not assert any claims under state law; thus he faces a greater barrier to recovery because the range of claims upon which he can recover is narrower than the other minor plaintiffs. ECF No. 234 ¶ 50. Additionally, unlike S.Y.B. and E.V., M.B.'s recovery is not subject to reduction based on independent claims by his parents. *Id.* Therefore, the recovery disparity when comparing the net settlement amounts for M.B., S.Y.B. and E.V. does not affect the equity of the settlement agreement.

Further, review of recovery in similar cases confirms the settlement is reasonable. *See Robidoux*, 638 F.3d at 1182. For example, in *Evans v. Antioch Unified School District*, eight special education students were subjected to physical and verbal abuse by their teacher, which included hitting, pinching, pinning them to the ground and forcibly picking their noses. No. C 13-01476 LB (N.D. Cal. Feb. 19, 2014); ECF Nos. 231 ¶ 61, 232 ¶ 61. The parents, also parties to the litigation, became aware of the abuse only after the teacher was removed from the classroom. The teacher was arrested on six felony counts of child abuse, and ultimately pled guilty to one felony and two misdemeanor charges. ECF No. 231 ¶ 61, 232 ¶ 61. The net recoveries of the minor plaintiffs ranged from $589,000 to $723,000. *Id.* Similarly, in *Phelan v. Brentwood Union School District*, a special needs student suffered from physical and emotional injuries at the hands of an abusive teacher. No. C 12-00465 LB, 2013 WL 323435, at *1 (N.D. Cal. Jan. 28, 2013); ECF Nos. 231 ¶ 62, 232 ¶ 62, 234 ¶ 51. The teacher was charged and pled nolo contendere to a misdemeanor violation of Penal Code § 273 for child endangerment. ECF Nos. 231 ¶ 62, 232 ¶ 62, 234 ¶ 51. The minor's net recovery was $570,000. 2013 WL 323435, at

*2. *See also Hugunin v. Rocklin Unified Sch. Dist.*, No. 2:15-cv-00939-MCE-DB (E.D. Cal. Mar. 23, 2018) (approving settlements ranging from $202,677.95 to $1,013,916.85 for students subjected to teacher's punching, kicking, sitting on and screaming at students). As the net recovery of each minor plaintiff here falls within the recovery range of similar actions, the settlement is fair and reasonable. The motions to approve the settlement agreement are GRANTED.

### B. Creation of Special Needs Trusts

Minor plaintiffs ask the court to establish special needs trusts under 42 U.S.C. § 1396p(d)(4)(A) and California Probate Code § 3604(b). Under the Probate Code, a special needs trust may be created if the court determines:

> (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
>
> (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust.
>
> (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Cal. Prob. Code § 3604(b). The minor plaintiffs satisfy these requirements. Each has been diagnosed with Autism Spectrum Disorder. ECF Nos. 231 ¶ 47, 232 ¶ 47, 234 ¶ 37. Without the trust, each will be ineligible for public assistance programs. ECF Nos. 231 ¶ 48, 232 ¶ 48, 234 ¶ 38. And individual amounts paid to the respective trusts do not exceed the minors' needs, as plaintiffs' experts reliably estimate the minors' long-term care cannot be met by public assistance alone. ECF Nos. 231 ¶ 49, 232 ¶ 49, 234 ¶ 39.

S.Y.B.'s net proceeds, $599,490.77, plus a 15 percent bond, will serve as the corpus of the trust. ECF No. 231 ¶ 53; *see also* Cal. Prob. Code § 2320(a) ("Except as otherwise provided by statute, every person appointed as a guardian . . . shall . . . give a bond approved by the court."); Cal. R. of Court 7.903(c)(5) ("trust instruments for trusts funded by court order must . . . [r]equire persons . . . to post bond in the amount required under Probate Code section 2320 et seq."). The trust will be funded in the amount of $689,286.84. ECF No. 231 ¶ 53. Lindsay

6

Bowman will serve as trustee, and Placer County Superior Court will provide on-going oversight of the trust. *Id.* ¶¶ 51, 52.

As to E.V., the trust will be funded in the amount of $688,286.84—E.V.'s net proceeds plus a 15 percent bond. ECF No. 232 ¶ 53. E.V.'s parents, Oliver and Jennifer Vergara, will serve as trustees, and Placer County Superior Court will provide on-going oversight of the trust. *Id.* ¶ 51, 52. Likewise, M.B.'s trust will be funded by net settlement proceeds plus a 15 percent bond, for a total corpus of $334,753.22. ECF No. 234 ¶ 43. Manoj Kumar Thottasseri and Seena Pattampurath will serve as trustees, and the Placer County Superior Court will oversee the trust. *Id.* ¶ 41, 42.

As the parties have made a showing of good cause, the court GRANTS the minor plaintiffs' requests to establish special needs trusts.

IV.     CONCLUSION

The court finds the proposed settlements and special needs trusts serve the best interests of each minor plaintiff. Accordingly, the court GRANTS the motions to approve the settlement agreements and establish special needs trusts as to each minor plaintiff, ECF Nos. 231, 232, 234, and ORDERS as follows:

**As to plaintiff S.Y.B.**

1. Guardians ad litem Duane and Kimberly Beecham are directed to execute the special needs trust for S.Y.B.
2. Lindsay Bowman shall serve as the Initial Trustee of the special needs trust for S.Y.B. and shall post bond in the amount of $689,286.84 for the trust.
3. The venue for on-going oversight of the special needs trust shall lie with Placer County Superior Court.
4. The sum of $599,490.77 shall be allocated to the special needs of S.Y.B.
5. Guardians ad litem Duane and Kimberly Beecham shall place S.Y.B.'s portion of the settlement, $599,490.77, into S.Y.B.'s special needs trust, and those funds shall not be considered an available resource for purposes of federal and state public assistance benefits eligibility.

6. Attorneys' fees in the amount of $3,000 shall be paid from the special needs trust to the Dale Law Firm for preparation and set-up of the special needs trust for S.Y.B.

**As to plaintiff E.V.**

1. Guardians ad litem Oliver and Jennifer Vergara shall execute the special needs trust for E.V.
2. Oliver and Jennifer Vergara shall serve as the Initial Trustees for the special needs trust for E.V. and shall post bond in the amount of $688,286.84 for the trust.
3. Venue for on-going oversight of the special needs trust shall lie with the Placer County Superior Court.
4. The sum of $598,510.84 shall be allocated to the special needs of E.V.
5. Guardians ad litem Oliver and Jennifer Vergara shall place E.V.'s portion of the settlement, $598,510.84, into E.V.'s special needs trust, and those funds shall not be considered an available resource for purposes of federal and state public assistance benefits eligibility.
6. Attorneys' fees in the amount of $3,000 shall be paid from the special needs trust to the Dale Law Firm for preparation and set-up of the special needs trust for E.V.

**As to plaintiff M.B.**

1. Guardian ad litem Manoj Thottasseri shall execute the special needs trust for M.B.
2. Manoj Thottasseri and Seena Pattampurath shall serve as the Initial Trustees of the special needs trust for M.B. and shall post bond in the amount of $334,753.22 for the trust.
3. Venue for on-going oversight of the special needs trust shall lie with the Placer County Superior Court.
4. The sum of $291,089.76 shall be allocated to the special needs of M.B.

5. Guardian ad litem Manoj Thottasseri shall place M.B.'s settlement, $291,089.76, into M.B.'s special needs trust, and those funds shall not be considered an available resource for purposes of federal and state public assistance benefits eligibility.

IT IS SO ORDERED.

DATED: December 12, 2018.

_____
UNITED STATES DISTRICT JUDGE